UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JESUS ELOY PEDRAZA

        Plaintiff,

v.                                Case No. 3:20-cv-141-J-34PDB

MARK INCH, et al.,

        Defendants.

_____

## **ORDER OF DISMISSAL WITHOUT PREJUDICE**

Plaintiff Jesus Pedraza, an inmate of the Florida penal system, initiated this action on February 7, 2020, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) under 42 U.S.C. § 1983. Pedraza names Mark Inch, Trinity Food Service, Centurion Medical, Ms. Bartly, John Godwin, Mr. Hester, and Mr. White as Defendants. Pedraza asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because of injuries he sustained during a slip and fall accident and the subsequent medical treatment he received. As relief, Pedraza requests injunctive relief and compensatory and punitive damages.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is

immune from such relief. See 28 U.S.C. § 1915A.  Additionally, the Court must read a plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Central State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 328 (1989)).  Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc. v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). As such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions

masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted).

**Pedraza's Allegations**

In his Complaint, Pedraza alleges that:

> On Oct. 16, 2019[,] at approximately 11:00 am while I was working in the kitchen, for food service at Columbia C.I., and [sic] I slipped and fell. (The floor had a lot of spilled water on it, but nobody put down a wet floor sign and the kitchen doesn't have any slip proof mats or paint to prevent falls.) I fell so hard that it jarred my whole back and neck, and I couldn't move, so officer White had to call medical for a stretcher. Nurse Bartly arrived with two orderlies and instructed them to put me on the stretcher, but as soon as they tried to move me I screamed because of the pain it caused and they stopped. Then they called for the head nurse and when she got there she said they needed a backboard and neck brace, but they only brought a backboard. When they put me on the backboard I told the nurse that my neck hurt really bad, but they didn't put me in a neck brace until I got to medical. The nurses kept acting like I wasn't hurt and I was faking it. So they kept telling me if I got up and walked around they would give me something for pain. From approximately 11:30 am to 5:30 pm I layed [sic] in medical in severe pain til [sic] finally a lady showed up [and] did a x-ray of my back and said I had two lower lumbar fractures. That was when the nurses finally took my injuries serious and declared me a trauma patient. At approximately 7:00 pm a[n] ambulance finally came and transported me to a Lake City, Florida hospital and then due to the severity of my injuries I was then transferred to a hospital in Jacksonville, Florida. Where I was treated for the pain and they performed a cat-scan and x-rays. When those were done I was told I needed a M.R.I. to determine the full extent of the damages, but I was told it was to[o] expensive to get a M.R.I. there and that they would schedule me for a M.R.I. at North Florida Regional Medical Center in Lake Butler, Florida. Then I was transferred back to Columbia C.I. m/u where I had to wait approximately 5 weeks to go get my M.R.I. done. After the M.R.I. was done I was told I had 2 bulging disc[s] in my neck, but no M.R.I. was done at that time on my back. I was told that I needed physical therapy and if that didn't work I would have to see a nuro-surgeon [sic] when

3

> I got released from prison, because they don't want to be
> responsible, and now I live in severe pain every day of my life.

Complaint at 14-15. Pedraza contends that Defendants Inch, Trinity Food Service, Centurion, Godwin, and Hester failed to ensure staff were properly trained in safety procedures and how to respond to slip and fall emergencies. Id. at 13. According to Pedraza, Defendant Bartly allowed two untrained inmates to move him after a severe slip and fall and waited over seven hours to get him to a hospital for proper treatment. Id. As to Defendant White, Pedraza states that he negligently failed to maintain a safe and secure work place for inmates in the kitchen. Id.

### Eighth Amendment Standard

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment

4

> guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Court notes that slip and fall accidents generally do not constitute a claim for cruel and unusual punishment because such incidents are considered negligence claims. See Winston v. Aducci-Washington, Case No. 7:17-cv-01099-VEH-SGC, 2018 WL 2272940, at *6 (N.D. Ala. Apr. 19, 2018) report and recommendation adopted, No. 7:17-cv-01099-VEH-SGC, 2018 WL 2266955 (N.D. Ala. May 17, 2018) (collecting cases finding slip and fall accidents failed as a matter of law to state a federal claim); Davis v. Corr. Corp. of Am., No. 5:07-cv-279-RS-EMT, 2008 WL 539057, at *3 (N.D. Fla. Feb. 22, 2008) ("Courts have regularly held that slip and fall accidents do not give rise to federal causes of action.").

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh circuit has explained that

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v.

5

> Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem). However, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a

6

prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

**Slip and Fall Accident**

The Court finds Pedraza's allegations concerning the slip and fall accident do not rise to the level of an Eighth Amendment violation. "[S]lippery floors constitute a daily risk faced by members of the public at large." Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir.2004). As such, the slippery conditions in the kitchen cannot be considered extreme nor does it pose an unreasonable risk of serious injury. Pedraza's claim that prison officials knew the floor was wet and failed to properly clean it does not establish conduct that is more than mere negligence. See Aducci-Washington, 2018 WL 2272940, at *6; Davis, 2008 WL 539057, at *3. Indeed, Pedraza has alleged nothing more than ordinary lack of due care, which is insufficient to state an Eighth Amendment claim. See Whitley, 475 U.S. at 319. Nothing in the Complaint would indicate Pedraza's claims regarding the accident are anything more than a standard slip and fall negligence claim. Accordingly, Pedraza's claims against Defendants for the conditions of the kitchen and his accident do not state a claim upon which relief can be granted. Therefore, his Complaint is due to be dismissed as to these claims.

7

**Medical Care**

As an initial matter, although Pedraza has generally pled facts concerning the medical care he received, he has not given sufficient factual details regarding the roles each Defendant played in the alleged Eighth Amendment violation, rendering his claims against each Defendant conclusory. Therefore, he has not stated a claim upon which relief can be granted. See Crow, 49 F.3d at 684. In any event, the Court again finds that Pedraza has failed to establish an Eighth Amendment violation. According to Pedraza, prison staff did not properly restrain him when they moved him, and unnamed nurses acted like he was not hurt and thought he was faking his injury. At most, this shows negligence in diagnosing and treating his medical condition, which is insufficient to establish an Eighth Amendment violation. See Daniels, 474 U.S. at 330-31. Ultimately, x-rays conducted by prison staff established the existence of injuries and staff sent him to various hospitals for diagnostic purposes and recommended physical therapy for treatment. To the extent Pedraza challenges the diagnostic techniques or forms of treatment, such decisions are "'a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted). Pedraza's allegation that prison officials did not want to be responsible for him seeing a neuro-surgeon is insufficient to state a claim upon which relief can be granted because it is conclusory in nature and does not identify which Defendant(s) told him this. See Crow, 49 F.3d at 684. The Court also notes that Pedraza has not alleged that physical therapy, the prison staff's recommended treatment plan, has been ineffective such that referral to a neuro-surgeon would have been needed.

Moreover, Pedraza has not alleged facts that would establish Defendants had a subjective knowledge of the risks of his serious medical claim and disregarded that risk. Indeed, Pedraza specifically alleges unnamed nurses did not believe he was initially injured, which cuts against a claim that these nurses had a subjective understanding of his injuries. Additionally, once an x-ray was done, prison medical staff had Pedraza transported to better equipped hospitals for diagnostic purposes. Even if Pedraza had demonstrated deliberate indifference, he has made no claims that the injuries were caused by anything other than the actual fall, which the Court has already concluded does not amount to an Eighth Amendment violation. As such, Pedraza has not established a connection between the alleged indifference and his injuries. Based on the above analysis, the Court finds that Pedraza has not established a viable Eighth Amendment claim of deliberate indifference to his serious medical needs.

**Supervisory Claims**

Pedraza also asserts supervisory claims against Defendants. The Eleventh Circuit has explained:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[1] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

---

[1] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[2] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds as recognized by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (rejecting the application of a heightened pleading standard for § 1983 cases involving qualified immunity)); see also Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights,[2] (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights,[3] (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it,[4] or (4) a history of widespread

---

[2] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).
[2] See Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").
[3] See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").
[4] See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These

> abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. See id. at 1328–29 (listing factors in context of summary judgment).[5] A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam). Here, any supervisory claims fail because Pedraza has not alleged any facts suggesting that Defendants were personally involved in, or otherwise causally connected to, any alleged violations of his federal statutory or constitutional rights.

## Claims Against Centurion

It appears that Pedraza is suing Centurion for alleged mismanagement of his medical care. Pedraza has failed to allege any claims or facts as to Centurion specifically; therefore, this claim is due to be dismissed as conclusory. See Crow, 49 F.3d at 684. Moreover, Centurion contracted with the Florida Department of Correction to provide medical services to inmates within the state of Florida. Although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state … is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of

---

allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").
   [5] West v. Tillman, 496 F.3d 1321 (11th Cir. 2007).

> respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Denham v. Corizon Health, Inc., Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at *3 n.1 (M.D. Fla. June 4, 2015) ("[W]hen a government function is performed by a private entity like Corizon, the private entity is treated as the functional equivalent of the government for which it works.") (citation omitted), aff'd (11th Cir. Jan. 13, 2017).

Where a deliberate indifference medical claim is brought against an entity, such as Centurion, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig, 643 F.3d at 1310 (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); see Denno v. Sch. Bd. Of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must

allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread

as to have the force of law." Bd. Of Cty. Comm'rs of Bryan Cty., Okla. V. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Centurion's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Pedraza must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation.

Upon review, Pedraza has neither identified an official Centurion policy of deliberate indifference nor an unofficial Centurion custom or practice that was "the moving force" behind any alleged constitutional violation. Centurion cannot be held liable based on any alleged conduct of or decisions by its employees simply because they were working under contract for Centurion to provide medical care to inmates. Pedraza's factual allegations relating solely to alleged individual failures in his medical care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Centurion had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Thus, Pedraza's § 1983 claim against Centurion is due to be dismissed.

Accordingly, it is

**ORDERED:**

1. This case is hereby **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A.

2. The Clerk of Court shall enter judgment dismissing this case without prejudice, terminating any pending motions, and closing the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of February, 2020.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

Jax-8

c: Jesus Pedraza #M18534